IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSELL WYDELL COLEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 18-4127 |
| | : | |
| v. | : | |
| | : | |
| GEORGE W. HILL PRISON (GWHCF), | : | |
| CURRENT WARDEN; GEO GROUP INC. | : | |
| (aka) COMMUNITY EDUCATIONS, INC.; | : | |
| CROZIER CHESTER MEDICAL | : | |
| CENTER, SARAH FALGAWSKI, M.D.; | : | |
| MICHELLE SOHADE, SECURITY | : | |
| SUPER.; UPLAND POLICE DEPT. | : | |
| CORPORAL WILLIAM MEYER, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                        November 6, 2018

The *pro se* prisoner plaintiff was a patient receiving treatment at a civilian medical center when he alleges that his treating doctor extended his insurance coverage without his consent to allow him to receive treatment for an additional period. While in the medical center, the plaintiff engaged in a physical altercation with another patient which resulted in his discharge from the medical center. In addition, the medical center's security supervisor drafted an incident report relating to this altercation. The police arrested the plaintiff, and he is currently defending against criminal charges in state court. As he awaits the ultimate disposition of his criminal charges, the plaintiff is incarcerated at a county correctional facility where he is being subjected to what he believes are unconstitutional conditions of confinement, including, *inter alia*, the triple-celling of inmates.

The plaintiff now seeks to proceed *in forma pauperis* in this civil action, primarily based on claims under 42 U.S.C. § 1983, against his treating doctor and the security supervisor at the medical center, the warden of the county correctional facility, the private company contracted to operate the county correctional facility, and the police officer who assisted with arresting him, completed the affidavit of probable cause, and testified at his preliminary hearing. He has also moved for the appointment of counsel.

For the reasons discussed below, the court will grant leave to the plaintiff to proceed *in forma pauperis* and will (1) dismiss his claims against his treating doctor and the medical center's security supervisor with prejudice because he has not stated a claim against those defendants and he cannot cure the defects in his claims, (2) dismiss the claims against the private company operating the county correctional facility and the warden for failure to state a claim, but the dismissal will be without prejudice to the plaintiff filing a new complaint in a separate proceeding, and (3) stay the false arrest claim against the police officer until the criminal proceeding against the plaintiff resolves in state court. The court will deny the plaintiff's motion for appointment of counsel at this time without prejudice to him renewing that motion when the court lifts the stay.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Russell Wydell Coley ("Coley"), commenced this action by filing an application for leave to proceed *in forma pauperis*, a prisoner trust fund account statement, and a complaint, which the clerk of court docketed on September 24, 2018. *See* Doc. Nos. 1–3. This court entered an order on September 27, 2018, which, *inter alia*, (1) denied the *in forma pauperis* application without prejudice because it was incomplete, and (2) directed Coley to either complete an application to proceed *in forma pauperis* or pay the filing fee and administrative

fees within 30 days.  *See* Order at 1–2, Doc. No. 5.  Coley submitted another application for leave to proceed *in forma pauperis* (the "IFP Application"), which the clerk of court docketed on October 9, 2018.  Doc. No. 6.  Coley later filed a motion for the appointment of counsel, which the clerk of court docketed on October 22, 2018.  Doc. No. 7.

In the complaint, Coley alleges that on or about August 7, 2018, he was admitted to the crisis unit of the Crozer Chester Medical Center ("CCMC") for observation.  *See* Compl. at ECF p. 11.  On August 8, 2018, he was discharged and taken to CCMC's assessment center, where he waited from 6:15 a.m. until 4:30 or 5:15 p.m. before he was seen.  *See id.*  It appears that Coley was admitted to the First Steps Program—apparently a drug and alcohol addiction program— under the care of Dr. Sarah Falgowski.  *See id.* at ECF pp. 3, 11.  While in the program, Coley was also under the care of a psychiatrist, because he seemingly also suffers from mental illness. *See id.* at ECF p. 12 (indicating that he was under the care of a psychiatrist); *see also id.* at ECF p. 19 (indicating that he had "psychiatric diagnosis").

Coley's insurance company approved him for 14 days of "intensive medically managed detox."  *Id.* at ECF p. 11.  Although he completed his detox program by August 14, 2018, Dr. Falgowski extended his insurance coverage without his consent to allow him to remain in the program until August 28, 2018.  *See id.* at ECF p. 3.  "During the course of [his] stay . . . upon successful completion of [his] detoxification [he] requested to be moved upstairs to the residential rehab. for various reasons[,]" including that his roommate required a lot of medical attention.  *Id.* at ECF p. 12.  Coley notes that a male and a female patient who were caught having sex were not administratively discharged from the facility; instead, they were given the option to transfer upstairs to the residential unit.  *See id.*

On August 22, 2018, Coley was acting as "the community president" for a morning meeting attended by members of the patient community. *See id.* at ECF pp. 13, 28. A female patient, who had arrived late for the meeting, overheard him mention a policy prohibiting sex, kissing, and holding hands at the facility. *See id.* at ECF pp. 13, 28–29. She interrupted him and made an inappropriate comment about "one on one girls [sic] sexual lesbian action," which he stated was unnecessary. *See id.* at ECF pp. 13–14, 29. She then jumped up from her seat and yelled racial slurs at him. *See id.* at ECF pp. 14, 29. Coley attempted to exit the room to get a staff-member to remove her from the room so the meeting could proceed without further incident. *See id.* at ECF pp. 14, 29.

While Coley attempted to leave, this other patient jumped in front of him. *See id.* at ECF pp. 14, 29. Coley became paranoid and was afraid that the patient had a weapon or might inflict bodily harm upon him, so he pushed her so he could get past her.[1] *See id.* at ECF pp. 14, 29. She ended up falling backwards over a chair and onto the ground. *See id.* at ECF pp. 14, 29. At this point, staff and nurses who had heard the commotion "flooded" the room, taking Coley and the other patient out of the room. *See id.* at ECF pp. 14, 29–30. Michelle Schade ("Schade"), the CCMC security supervisor, "appeared to take an incident report." *Id.* at ECF pp. 3, 14. Coley's case manager, Latrice Burgos, met him in his room and informed him that he and the other patient were being administratively discharged from the facility because of their altercation. *See id.* at ECF pp. 3, 15, 30.

Security personnel interviewed Coley about the incident with the other patient, but he refused to speak to an unidentified "Caucasian woman." *See id.* at ECF p. 16. Coley believes that this refusal prompted the unidentified woman to contact the Upland Police Department. *See id.* Two officers then arrived at the hospital, a Corporal William Meyer, and "an unknown

---

[1] Coley noted that he did not strike or choke her. *See* Compl. at ECF p. 14.

young African[-]American patrolman who resides in Chester County but is employed by [the] [B]orough of Upland." *Id.* at ECF pp. 16, 30.

After CCMC security personnel finished interviewing Coley, the police attempted to interrogate him without providing him with *Miranda* warnings or providing him with an attorney. *See id.* at ECF p. 17. Coley asserts that any information the officers obtained "was in violation of HIPPA [sic] rights because [his] hospitalization was under contract between [his insurance company] and CCMC." *Id.* He also alleges that his name and identity were disclosed to the police in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). *See id.* at ECF p. 3.

Coley eventually obtained his belongings, including his cellular phone, and he attempted to power on his cell phone. *See id.* at ECF pp. 17, 31. CCMC security and Corporal Meyer prohibited him from powering on his phone. *See id.* at ECF p. 17. Coley later asked Corporal Meyer to power on his phone so he could call his mother, who lives in Brookhaven (a neighboring municipality), but Corporal Meyer told him that he would give Coley a ride. *See id.* at ECF p. 18.

Although Corporal Meyer told Coley that the police were going to issue him a summary offense, once Coley and the officers exited the building, Corporal Meyer directed the other officer to arrest Coley by placing him in handcuffs. *See id.* at ECF pp. 3, 18–19. Coley claims that the police detained him "without proper warrant, swearing affidavit & criminal complain[t]." *Id.* at ECF p. 3; *see also id.* at ECF p. 18-19 (discussing circumstances surrounding arrest).

The police transported Coley to the Chester Police Department to book him on charges. *See id.* at ECF p. 20. The police did not tell him what they were charging him with, so "in [his] mind [he] was kidnapped from a medical facility by these two actors in violation of my civil and

constitutional rights." *Id.* Coley also was not allowed to use the phone, and it appears that the police took him to yet another location, the Brookhaven Police Headquarters, where he appeared handcuffed via a videoconference before someone from the "Delaware County Bail Interviewer's Office." *See id.* at ECF pp. 20–21. During the videoconference, the interviewer did not inform Coley about the charges against him. *See id.* at ECF p. 21. Coley also provided the interviewer with the contact information for his mother and his worker's compensation attorney, but the interviewer never contacted either of them. *See id.*

Eventually, Coley appeared before Magisterial District Judge Walter McCray, III, who arraigned Coley on the charges of Strangulation, Simple Assault, and Harassment.[2] *See id.* at ECF p. 22. Judge McCray set bail at $30,000 or 10%. *See id.* Coley claims that he had a right under the Americans with Disabilities Act to have an advocate or a mental health hearing officer present, but apparently they were not provided to him. *See id.* at ECF p. 23.

After the arraignment, the other unidentified officer took Coley to the holding cell "in luei [sic] of the $3,000.00 ransom to regain [his] freedom." *Id.* This officer allowed Coley to use the officer's phone to call his family for money. *See id.* It appears that Coley was unable to get in touch with a family member and, since the officer used *67 before making the call, Coley's family members could not return the call. *See id.* Coley claims that his due process rights were violated when he was not given a reasonable time to pay the bail amount or get in touch with his attorney. *See id.* at ECF pp. 23–24. The police later transported Coley to the

---

[2] Public dockets reflect that Coley was charged with Strangulation – Applying Pressure to Throat or Neck (18 Pa. C.S. § 2718(a)(1)), Simple Assault (18 Pa. C.S. § 2701(a)(1)), and Harassment – Subject Other to Physical Contact (18 Pa. C.S. § 2709(a)(1)). *See* Court of Common Pleas Docket, *Commonwealth v. Coley*, CP-23-CR-5357-2018 (C.P. Delaware), *available at*: https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-23-CR-0005357-2018 ("CP Docket"); *see also* Magisterial District Court Docket, *Commonwealth v. Coley*, MJ-32239-CR-326-2018, *available at*: https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-32239-CR-0000326-2018 ("Magisterial District Court Docket").

George W. Hill Correctional Facility ("GWHCF"), which is under an operations contract with GEO Group, Inc. (also known as Community Educations, Inc.). *See id.* at ECF p. 24.

On September 6, 2018, Coley had a preliminary hearing before a magisterial district judge, after which the magisterial district judge bound over the charges to the Court of Common Pleas for trial.[3] *See* Magisterial District Court Docket. Coley was dissatisfied with the work performed by the assistant public defender appointed to represent him at the preliminary hearing because, *inter alia*, she suggested that he waive the hearing so he could request reduced bail and he wanted to proceed with the hearing so he could question or cross-examine the affiant, Corporal Meyer, Schade, and other witnesses.[4] *See* Compl. at ECF pp. 26–27. Coley was also unhappy with the conditions present in the holding cell. *See id.* at ECF p. 27.

While incarcerated at GWHCF, Coley alleges that he has been "subjected . . . to cruel and unusual punishment as a pretrial detainee" because he has "been triple housed, slept on concrete floor 2 days and [his] civil constitutional rights [have been] denied." *Id.* at ECF p. 3. He has "been in a 2 man cell, with 3 inmates from 8/24 to 9/18/18, continu[es to] sleep[] on floor, in a plastic boat and [is] charge[d] 180.17 like a work release inmate when [he is] still a pre-trial detainee." *Id.* Coley adds that when he was in booking, he was "housed with up to 17 detainees for 2 days without proper safety precautions." *Id.* Coley asserts that his prior injuries from "a work-related injury are worse from sleeping on a concrete floor." *Id.* at ECF p. 6.

Coley additionally alleges that during his incarceration at GWHCF, he has "been psycologically [sic] affected by inmates[,] treated like animals instead of humans." *Id.* He

---

[3] Apparently, the victim, not the affiant, testified at the preliminary hearing. *See* Compl. at ECF p. 28.
[4] Coley was also dissatisfied because the assistant public defender did not object to the victim testifying during the preliminary hearing because he claims that the affidavit of probable cause in support of his arrest was not based on the victim's statement, but rather on other alleged witnesses to the altercation (none of whom were present at the preliminary hearing). *See* Compl. at ECF pp. 28, 32. Coley's counsel also did not object to discrepancies and contradictions in the victim's testimony. *See id.* at ECF p. 32. Coley believes that his counsel's ineffectiveness caused the charges to be bound over to the Court of Common Pleas for trial. *See id.*

asserts that an inmate that spoke little English died in there, other inmates have committed

suicide, and he has witnessed inmates being tortured. *See id.* Coley also attached copies of

grievances to the complaint, but the documents are difficult to read because the copies are not

dark enough. *See id.* at ECF pp. 8–9. One grievance concerns another inmate who woke up

Coley and allegedly instigated a fight by threatening to punch him. *See id.* It appears that no

physical altercation actually occurred, and that Coley informed correctional officers of this

incident. *See id.*

Based on the aforementioned allegations, Coley appears to assert various claims against

the (1) "current warden" of GWHCF (the "Warden"), (2) Geo Group, Inc. a/k/a Community

Educations, Inc., (3) Dr. Falgowski, (4) Schade, and (5) Corporal Meyer. *See id.* at ECF pp. 1, 2.

He is seeking (1) summary judgment, (2) $1,000,000, (3) compensatory and punitive damages,

and (4) a Department of Justice investigation into "prison intake, booking, and housing

procedures." *Id.* at ECF p. 5. With regard to his attempts to exhaust certain claims, Coley

contends that he has partially exhausted his claims because GWHCF has refused to provide him

with requested grievance forms and it "systematically denies" the grievances it receives. *See id.*

at ECF pp. 4, 5. He was able to get two from another inmate and he completed those forms.[5]

*See id.* at ECF p. 4.

## II. DISCUSSION

### A. The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or
> defense of any suit, action or proceeding, civil or criminal, or appeal therein,
> without prepayment of fees or security therefor, by a person who submits an

---

[5] Presumably, these are the two forms attached to the complaint. Then again, Coley alleges that these grievances pertained to the triple-celling issue at GWHCF. *See* Compl. at ECF p. 4.

affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1).  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131-32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit.  *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit.").  "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence.  [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*."  *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application and the prisoner trust fund account statement, it appears that Coley is unable to pay the costs of suit.  Therefore, the court will grant him leave to proceed *in forma pauperis*.[6]

---

[6] As a prisoner, Coley is obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

**B.      Standard of Review of Complaints Under 28 U.S.C. § 1915(e)(2)(B)**

Because the court has granted Coley leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief").  A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory."  *Deutsch*, 67 F.3d at 1085.  As for whether a complaint is malicious, "[a] court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Id.* at 1086.  "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to

dismissal for failure to state a claim under § 1915(e)(2)(B)).  Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).  In addressing whether a *pro se* plaintiff's complaint is frivolous or fails to state a claim, the court must liberally construe the allegations in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339-40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

## C.      Analysis

In this action, Coley has grouped several sets of claims together.  One group of claims is based on Coley's stay and treatment at CCMC and his arrest there, with a focus on the actions of Dr. Falgowski and Schade.  A second set of claims relate to Coley's arrest and prosecution. Many of his allegations underlying those claims do not pertain to any of the named defendants, but some pertain to Corporal Meyer.[7]  A final set of claims concern the conditions at GWHCF, with a focus on the number of inmates with whom Coley was housed.  Although unclear, it appears that Coley raises those claims against the GEO Group and the Warden.  The court will address each of these groups of claims in turn.

### 1.      Claims Against Dr. Falgowski and Schade

Coley's first group of claims pertains to events which allegedly occurred while he was a patient at CCMC insofar as they relate to Dr. Falgowski and Schade.  It appears that Coley is

---

[7] For instance, Coley raises various allegations about his attorney, his bail, the conditions of a holding cell, and other matters that do not relate to any of the defendants named in this case and which therefore do not support a basis for a claim here.  In any event, Coley should first raise any constitutional deficiencies concerning his state-court criminal matter with the state court.

attempting to raise a claim under HIPAA against Dr. Falgowski for extending his insurance coverage to cover an extended stay at CCMC. While even more unclear, it appears that he attempts to assert some sort of claim under HIPAA against Schade for contacting the police and essentially providing the police with his identity. Coley may not maintain either of these claims because there is no private right of action under HIPAA. *See Rigaud v. Garofalo*, No. Civ. A. 04-1866, 2005 WL 1030196, at *3 (E.D. Pa. May 2, 2005) (concluding that HIPAA does not provide for private right of action and explaining that "[w]hile the Third Circuit has not specifically addressed the issue whether there is an express or implied private right of action under HIPAA, several other federal courts have held that there is no such right"); *see also Hatfield v. Berube*, 714 F. App'x 99, 105 (3d Cir. 2017) (per curiam) (concluding that district court properly dismissed plaintiff's claims under HIPAA based on disclosure of mental health diagnoses of plaintiff and her children because "HIPAA does not create a private right of action for alleged disclosures of confidential medical information[]" (internal quotation marks and citation omitted)); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("We agree with the district court that this claim fails because HIPAA does not create a private right of action."); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) ("'HIPAA itself provides no private right of action.'" (quoting *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007)). "Instead, HIPAA provides for penalties to be imposed by the Secretary of the Department of Health and Human Services[.]" *Thomas v. Univ. of Tenn. Health Science Ctr. at Memphis*, No. 17-5708, 2017 WL 9672523, at *2 (6th Cir. Dec. 6, 2017) (citing 42 U.S.C. § 1320d-5(a)(1)). Accordingly, there is no legal basis for a HIPAA claim against Dr. Falgowski and Schade.

To the extent that Coley is attempting to assert claims against Dr. Falgowski and Schade under 42 U.S.C. § 1983, those claims fail as well. To succeed on claims under section 1983,

> a plaintiff must show a deprivation of a right secured by the Constitution and laws of the United States, and he must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 47, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The color-of-state-law requirement is a threshold issue; "there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). To show that the defendant acted under color of state law, a litigant must establish that the defendant is a "state actor" under the Fourteenth Amendment. *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 169 n. 1 (3d Cir. 2004).

*Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 67 (3d Cir. 2006) (per curiam).

The "touchstone" of the state-action inquiry centers on the proposition that "state action may be found if, though only if, there is such a close nexus between the [s]tate and the challenged action that seemingly private behavior may be fairly treated as that of the [s]tate itself." *P.R.B.A. Corp. v. HMS Host Toll Rds., Inc.*, 808 F.3d 221, 224 (3d Cir. 2015) (internal quotation marks and citations omitted). The Third Circuit has

> outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:
>
> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (alteration in original) (internal quotation marks and citation omitted).

Here, the allegations provide no factual support to demonstrate that it is plausible that Dr. Falgowski or Schade are state actors; instead, they appear to be merely private citizens employed at a local hospital. In addition, the allegations do not suggest that Dr. Falgowski violated Coley's constitutional rights, as she is alleged only to have treated Coley at CCMC and to have

procured insurance coverage for him to stay for treatment for a longer period of time, albeit allegedly without his permission. As for Schade, Coley's allegations against her appear to consist of his disapproval of her possibly contacting the police after the incident with the other patient and then her drafting of an incident report after speaking to him.[8] Even presuming that the information in Schade's incident report was incorrect and that it was given to the police in connection with Coley's arrest, "[m]erely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor." *Cooper v. Muldoon*, Civ. A. No. 05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006) (citations omitted); *see also Simmer v. Kehler*, Civ. No. 15-2285 (RBK/JS), 2015 WL 6737017, at *3 (D.N.J. Nov. 2, 2015) (collecting cases and explaining that "[m]erely giving information to police officers is insufficient to convert a private party into a state actor" even if information is false); *Cvetko v. Derry Twp. Police Dep't*, Civ. A. No. 1:09-CV-1260, 2010 WL 1791140, at *4 (M.D. Pa. May 4, 2010) ("[A] private actor does not proceed under color of state law merely by furnishing the police with information pertaining to a possible public disturbance."); *Collins v. Christie*, Civ. A. No. 06-4702, 2007 WL 2407105, at *4, n.9 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983.").

In sum, Coley has failed to include any allegations in the complaint to suggest a plausible basis for a claim against Dr. Falgowski or Schade. Therefore, the court will dismiss Coley's claims against these defendants. As Coley cannot cure the defects in his HIPAA and section

---

[8] Coley also indicated that an unidentified person with whom he refused to talk contacted the police.

1983 claims against Dr. Falgowski or Schade, the court will not provide him with leave to amend those claims.[9]

## 2. Claims Based on Coley's Arrest and Prosecution

Coley includes a number of allegations pertaining to his complaints about his arrest and prosecution. Most of those allegations have nothing to do with the named defendants in this lawsuit. The only discernable claim from Coley's allegations related to his arrest and prosecution that related to a named defendant is a potential Fourth Amendment false arrest claim against Corporal Meyer.

To bring a section 1983 claim for either false arrest (or false imprisonment) under the Fourth Amendment, a plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013) (setting forth elements of claims). Here, Coley's claims relating to his arrest and prosecution are premature as his prosecution is still proceeding in the state court. *See* CP Docket. In circumstances where

> a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a proceeding or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

*Wallace*, 549 U.S. at 393-94. Accordingly, the court will stay Coley's claim against Corporal Meyer to allow the state criminal proceedings to conclude.

---

[9] A district court should generally provide a pro se plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). In particular, the court notes that "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

### 3. Claims Based on the Conditions of Confinement at GWHCF

Coley's final set of claims challenge the conditions at GWHCF. As explained below, Coley has failed to include sufficient allegations to establish plausible claims against the relevant defendants at this time. Nevertheless, the court will dismiss the claims without prejudice to Coley proceeding in accordance with the court's instructions.

### a. Liability of the Warden and the GEO Group

Coley's claims challenging the conditions of his confinement are logically construed as being raised against the Warden and the GEO Group. Regarding Coley's claims against the Warden, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are two theories of supervisory liability when an individual defendant is a supervisor: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). Here, Coley has not stated a claim against the Warden because the complaint does not raise any specific allegation against the Warden reflecting that the Warden was personally involved in any of the claimed constitutional violations or that he is a policymaker who established a policy, practice or custom which directly caused constitutional harm to Coley.

As for Coley's claims against the GEO Group, a private corporation under contract to provide prison health services may be liable under section 1983 if that entity's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of section 1983); *French v. The GEO Grp., Inc.*, Civ. A. No. 18-CV-4312, 2018 WL 4929859, at *2 (E.D. Pa. Oct. 10, 2018) ("The GEO Group acts under color of state law by providing services for the George W. Hill Correctional Facility."); *Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *3, n.5 (E.D. Pa. Mar. 11, 2009) ("For purposes of Plaintiff's § 1983 claims, Defendant GEO Group, a private company, was acting under the color of state law since it provided daily functional services for the Delaware County Prison."). To assert a plausible claim under section 1983, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Customs" are practices so permanent and well-settled as to virtually constitute law. *Monell*, 436 U.S. at 691. Regardless of whether a plaintiff is seeking to impose *Monell* liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that in both methods to obtain liability under *Monell*, "a plaintiff must show that an official who has the

power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").

In this case, Coley has not tied any of the conditions of which he complains to a custom or policy of the GEO Group. Accordingly, the complaint as currently pleaded does not state a plausible claim under section 1983 against the GEO Group. Nonetheless, as it is possible that Coley could cure this pleading defect in an amended complaint, the court will grant him leave to amend. But, as there are substantive defects concerning Coley's conditions-of-confinement claims in addition to the pleading defects identified above, the court will next discuss those to provide additional clarification should Coley file an amended complaint.

b.     Claims Based upon Number of Inmates Housed with Coley

The focus of Coley's allegations about the conditions of his confinement at GWHCF appears to relate to the number of inmates with whom he was housed. The Due Process Clause of the Fourteenth Amendment applies to these claims because Coley is a pretrial detainee. *See Hubbard v. Taylor (Hubbard I)*, 399 F.3d 150, 158 n.13 (3d Cir. 2005). To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."). When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39 ("A court must decide whether the [particular restriction or condition

accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Hubbard I*, 399 F.3d at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes).[10]

In this case, Coley appears to predicate his claim upon the fact that he was housed with multiple inmates for a period of two days and a three-man cell for a period of approximately one month. He indicates that he slept on the concrete floor, but it appears that he was then moved to a "plastic boat" on the floor, so his allegations about the conditions are not entirely clear. *See, e.g.*, Compl. at ECF p. 3. Coley also notes that his "injuries from a work-related injury are worse from sleeping on [the] concrete floor." *See id.* at ECF p. 6.

Regarding Coley's allegations about the number of inmates with whom he was housed, the court notes that housing multiple inmates in a cell does not alone establish a constitutional violation. *See Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 236 & n.6 (3d Cir. 2008) (explaining that "our own precedents have never established a right of pretrial detainees to be free from triple-celling or from sleeping on a mattress placed on the floor"); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Instead, in assessing whether the number of inmates in a cell violates the Fourteenth Amendment, the court must consider the totality of the circumstances. *See, e.g.*,

_____

[10] The *Bell* Court also explained:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

441 U.S. at 538-39 (internal quotation marks, citations, and footnote omitted).

*Hubbard II*, 538 F.3d at 236, 238 (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation, and concluding: "[W]e hold that based on the totality of the circumstances presented on this factual record, Plaintiffs were not unconstitutionally punished in violation of the Fourteenth Amendment"). "In evaluating the conditions, the court must look to a number of factors, including the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise." *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650 (8th Cir. 1996).

Here, the totality of the circumstances alleged in the complaint does not establish a Fourteenth Amendment violation. Coley's allegations show that he was subjected to the challenged conditions for a relatively short period of time. In addition, he does not provide any allegations about how much time officials/corrections officers at GWHCF required him to spend in his cell or explain in more than vague terms how his conditions of confinement affected his preexisting injury. Without more, these allegations fail to state a claim because they do not plausibly establish that the conditions of confinement at GWHCF amounted to punishment. *See Bell*, 441 U.S. at 542-43 (concluding that double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and average length of incarceration was 60 days); *Hubbard II*, 538 F.3d at 232-35 (concluding that triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *see also Walker v. George W. Hill Correctional*, Civ. A. No. 18-CV-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that

he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding). Accordingly, although Coley may be able to develop his allegations to state a plausible claim, the complaint does not state a constitutional violation as pleaded.

c.     <u>Claims Based on Alleged Flaws in Grievance System</u>

Coley alleges that the staff at GWHCF "systematically denied [him] access to exhaustion of administrative grievance procedures." Compl. at ECF p. 10. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam) (citation omitted); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam) ("The District Court correctly noted that an inmate has no constitutional right to a grievance procedure. Thus, we agree that the DOC's act of denying [the plaintiff's] grievance did not infringe upon his constitutional right to petition the government for redress." (internal citation omitted)). Accordingly, although Coley's allegation would affect the analysis regarding whether he properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim.

d.     <u>Claims Based on Financial Charges</u>

Coley notes in the complaint that he has been "charge[d] 180.17 like a work release inmate when [he is] still a pre-trial detainee." Compl. at ECF p. 3. This allegation is not sufficiently developed to state a plausible claim and it is not even evident that this is a claim that Coley is seeking to pursue. Nonetheless, if Coley's allegation can be interpreted to be raising a challenge to prison programs that require inmates to share in the cost of their incarceration, it is worth noting that courts have consistently rejected such challenges. *See Tillman v. Lebanon Cty.*

*Corr. Facility*, 221 F.3d 410, 414, 416–23 (3d Cir. 2000) (affirming district court's grant of summary judgment in favor of county correctional facility where district court rejected former prisoner's claims that facility's daily assessment of $10.00 for housing costs in accordance with facility's "Cost Recovery Program" violated Eighth and Fourteenth Amendments of United States Constitution); *Williamson v. Northampton Cty. Prison*, Civ. A. No. 12-2333, 2012 WL 1656291, at *2 (E.D. Pa. May 9, 2012) (rejecting challenge to prison's deduction of half of prisoner's deposit for room and board where "[n]othing in the complaint suggests that plaintiff would be subject to a longer sentence or that he would be denied basic human needs if he did not pay a certain amount of money toward his room and board"); *Hohsfield v. Polhemus*, Civ. No. 11-3007 (FLW), 2012 WL 603089, at *4 (D.N.J. Feb. 23, 2012) ("'User fees', similar to the one at issue here, have been determined to be nominal surcharges and non-punitive, and therefore, they do not violate due process."); *Firestone v. Rockovich*, No. 1:17-cv-2116, 2018 WL 347728, at *2 (M.D. Pa. Jan. 10, 2018) ("The 'booking fee' of which [the plaintiff] complains, involves a routine matter of accounting based on a fixed fee.").

### e.    Claims Based on Altercation with Inmate

As pointed out above, Coley attached a grievance to the complaint reflecting that he was involved in a verbal altercation with another inmate. It is unclear what happened with the other inmate and the court is unsure whether Coley is bringing a claim based on this incident. The court has also had difficulty reading the grievance because it appears to be a copy of a document written in pencil. Accordingly, the court cannot discern any basis for a claim based on this grievance.

#### 4. Issue with the Joinder of the Named Defendants in this Action

Rule 20 of the Federal Rules of Civil Procedure allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). "But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, Civ. No. 13-2553 (KM)(MCA), 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (citations and internal quotation marks omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, the questions of law underlying Coley's claims against Corporal Meyer vis-à-vis his arrest are entirely distinct from the questions of law and fact underlying his claims challenging the conditions of confinement at GWHCF. Furthermore, while it makes sense from a case management perspective for the court to stay Coley's claims against Corporal Meyer, there is no reason to stay his claims relating to the conditions at GWHCF should he seek to amend those claims. Accordingly, these two sets of claims should proceed in separate lawsuits.

### III.    CONCLUSION

For the foregoing reasons, the court will dismiss Coley's claims against Dr. Falgowski and Schade with prejudice because he has not stated a claim against those defendants and he cannot cure the defects in his claims.  The court will also dismiss Coley's claims against GEO Group and the Warden for failure to state a claim, but the dismissal will be without prejudice to Coley filing a new complaint in a separate proceeding.  Coley's only remaining claim, a false arrest claim against Corporal Meyer, will be stayed until the criminal proceeding against Coley resolves in state court.  The court will deny Coley's motion for appointment of counsel at this time without prejudice to Coley renewing that motion when the court lifts the stay.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.